We'll hear argument first this morning in Case 16-5294, McWilliams v. Dunn. Mr. Bright. Thank you. Mr. Chief Justice, and may it please the Court, this Court in 1985 clearly established in its decision in Ake v. Oklahoma that a poor defendant whose mental health or mental issues were a significant factor in the case is entitled to an expert, and an expert independent of the prosecution, to assist in the evaluation, the preparation, and the presentation of an effective defense for the defendant. Suppose we thought that, and it's not your position, I understand it, that Ake was ambiguous on this point. And then over time it became clear that really the psychiatrist ought to be consulting with the defense and not with the prosecution. Would we say that the basic right was clearly established and that over time we are simply making a refinement, or if we think Ake is ambiguous, I know you disagree, if we think Ake is ambiguous, we are establishing a new right when we say it must be a defense psychiatrist? Well, as Your Honor guessed, we don't think it's ambiguous. In fact, we think it's quite clear when you look at it. I'm sorry. Go ahead, Bob. I'm assuming that we find it ambiguous, I'm asking. Then can it be the position that this is just a refinement of the right, or is it a new right? Well, if you accept that it was ambiguous, which, of course, we do not accept, but of course, I mean, this goes to some of the clearly established cases the Court has looked at where it's, does it extend a decision that the Court has rendered, and is this asking for something more? We would submit here this can't be anything but an independent expert, because it even goes to the court. Why is that so, Mr. Bright, if it's we're informed correctly by the Respondent that on remand in Oak 8 itself, the lower courts held that due process is satisfied by the assistance of a neutral psychiatrist? So if it was all that clearly established, it was not understood by in the very case that was argued here. And then on remand, according to the Respondent at least, the lower courts held a neutral psychiatrist is good enough. Well, but whether or not the Oklahoma court got it right or wrong when the case was established, we believe starts and ends with this Court, whether something is clearly established. And when the Court says where it's a significant factor, you have a right to an expert and then goes through the things that that expert is going to do, to gather facts for the defense, to analyze facts for the defense, to even assist in cross-examination of the State's expert witness, you can't get more intimately involved in the defense of a case than being involved in the cross-examination of witnesses for the prosecution. Well the prosecution didn't have a partisan expert either, but there was this, everyone who was appointed was a neutral expert serving the court, the prosecution, and the defendant. So I think the Red Bridge suggests you're asking for something that the prosecution didn't have, didn't have an independent expert. Well, in our case, it was very much like AIC. I mean, there were mental health experts who testified, but all of them were State experts. What do you mean by State experts? Provided by the State or working for the prosecution? No, they all worked for the State hospital. And so as a result, they were people who the Lunacy Commission, which did the first examination, are three doctors at the State hospital that make an evaluation and then report to the court. So you mean they were paid for work by the State as opposed to being working for the prosecution for a particular result in a given case? That's true, Mr. Chief Justice, but had there been an issue, which there was in this case and should have been litigated, certainly the State has no problem having an expert. The State can retain an expert, can retain more than one. The right that was given in AIC was very modest. It was very modest. It was an expert. The defendant can't choose the expert, and it's only one expert. But it is an expert to at least make the adversary system work to some extent. And I think what the court recognized, and I think this goes to what Justice Ginsburg was asking me about, is that mental health today, as the court said in AIC, experts vary widely with regard to, first of all, whether there is a mental illness, second, what it is, what the effects of it are on behavior, and how it plays into the legal process. Kagan. But even the terminology that you are using, both here and in your briefs, contains some ambiguity. Because you keep saying, well, AIC established the rights to an independent expert, but independent can mean really the defense expert, or independent  defense. And what you are saying that AIC held was that it was a defense expert. But, and there are certainly parts of the opinion that read like that. There's no question that when AIC talks about assistance over and over again, it reads like a defense expert. But the question is, did AIC really preclude the idea of a completely independent person, independent of both the state and the defense? Well, it did because of the way it described what the expert was to do. And in the two places where the Court said we hold, they said we hold when it is a significant factor that the defendant is entitled to an expert. That was with regard to both the guilt phase issues and with regard to the penalty phase issues. So I think the Court, and then the Court is in, this is not one of these cases that has, at least in my opinion, a lot of ambiguity because the Court could not have been more detailed or specific about what that expert was going to do. Kennedy Suppose you have a single court-appointed expert. And let's assume he's not paid by the State. He or she is an outside expert. Can that expert ethically, under the ethical rules that apply to psychiatrists, meet just with the defense and say, now you should be sure to do this, and then go meet just with the prosecution? Or do both parties have to be present? Do you know what their ethical duties are in this regard? I read the article by Dr. Stone and wasn't quite clear on this. Kennedy I think the ethical duty is that you can't work both sides of the street in that way. It's hard to imagine how that could ever work unless you just want the opinion of the expert. But once what happens so often with people who start out as neutral experts is they become experts for one side or the other, usually the prosecution. Roberts Well, you say in your reply brief, on page 1, you've got four examples where you say the language clearly shows that they were meant to be, I don't know what the word is, you hope it's not partisan or nonobjective, but aligned experts, I guess. And the first one, they're supposed to provide assistance that may well be crucial to the defendant's ability to marshal his defense. Well, you can certainly understand the assistance being, here is the diagnosis. This is what these medical terms mean. This is what the, you know, rules are, or this is a, you know, it doesn't necessarily mean that they're going to be partisan in helping shape the defense. The other one, another one of the four you say is they're needed to translate a medical diagnosis into language that will assist the trier of fact. Well, that doesn't entail partisanship of any kind. It's simply sort of a medical instruction. You know, this particular term means this, and then the lawyer can go off and develop her defense. But I don't think you can take each one in isolation. You have to look at all the things that the Court talked about. It talked about this person gathering information, organizing information, meeting with the defense about how this can be used in the defense of the case, choosing among viable defenses. It even talks about the person, as I said, talking to the lawyers about how do you cross-examine the prosecution's expert. Sotomayor, that is the essence of this. I know that there is a lot of talk about independent, neutral defense expert. But really what's at issue is what kind of aid a defendant is entitled to to mount a viable defense, correct? Correct. And so once there is evidence, and here there was evidence at the last moment, that in fact, as the prior experts had testified, that certain tests should be taken, that certain signs of organic brain injury were present, once that was confirmed, what the expert was saying to the Court is, now I need help. Right. Because this expert, this Court-appointed expert, is telling us that all these things really are irrelevant to my defense, but I have a viable claim that organic brain injury exists and that it might have an effect and provide me with a defense. So I need assistance in determining that, correct? Exactly. In what other area do we permit the State or a court to appoint, to not fund an expert once there is viable evidence of a potential defense? I don't know of any. You mean with regard to mental health? In any area. I mean, you look at Ford v. Wainwright, where the Court looked at the question of whether someone was competent to be executed or not, and the Court found that there, for the process to work, you couldn't have what Florida had, which was just accept information from the State's doctors and not accept information from the defendant's doctors. And, of course, this Court found in Panetti v. Quarterman that that was a clearly established rule, what was in Justice Powell's concurring opinion was a clearly established rule about the procedures that were to be involved with regard to whether or not a person is competent to be executed. Now, I'm not sure that you've answered Justice Kennedy's question. He started with the observation that there is an argument. I know we know you don't accept it. You don't have to keep saying that. That AIC was ambiguous. If it was, what happens to your case? How do you win? How do you get to the point that this was sufficiently clearly established at the time of this case so that it was an unreasonable application of law by the court below? I think to prevail under 2254d, we have to show that there was a violation of a clearly established, of a Federal rule, a constitutional rule that was clearly established by decision of this Court. So I think that's what our what we have to show, and AIC is what we have to show for that. And I want to say this before I move on to that, you say it's clear, the Lefebvre treatise on criminal law, which I think is, if not the most cited treatise in this Court, certainly one of them, this is a quote. AIC appears to have been written so as to be deliberately ambiguous on this point, thus leaving the issue open for future consideration. So your position has to be that the Lefebvre treatise is wrong. It wasn't ambiguous at all, but deliberately ambiguous. Kennedy, I have the greatest respect for Professor Lefebvre, but just like lower courts, professors make mistakes, too. Well, they do, but your position has to be that Lefebvre made a mistake, the Fifth Circuit made a mistake, eight State courts, final State courts made mistakes. The Re-Mand in AIC, it was a mistake. All of those things, I'm not saying whether you're right or wrong in the merits, but that body of authority that takes a different position would seem to me to establish that the question was ambiguous, at least coming out of AIC, as opposed to clearly established. Well, you think whether a proposition is clearly established begins and ends with this Court. I think the ultimate question of whether it was clearly established, yes, this has been 30 years since AIC was decided. So of course there are going to be, lawyers and judges being what they are, there are going to be differences. But I would point out the weight of the authority is certainly on our side in terms of courts finding it. I'm sorry. Alito, as I understand your position, and you'll correct me if I'm wrong, you seem to be arguing that what the defendant is entitled to is an expert who will function more or less like the kind of expert who would be retained by the defense if the defense were simply given funds to hire an expert. Am I right in thinking that? Well, that's not what the case holds. But in terms of what this expert would do, you want an expert who would function more or less like that. Well, to — I mean, the prosecution can hire as many experts as it wants. Right. It can choose experts that will come out the way it wants. If you're in Texas and you want to prove future dangerousness, doctors will testify every single time they get a chance that the defendant is a future danger. So you can hire that kind of partisan expert. Yeah, well, that's what I'm getting at. I don't see how an expert who is chosen by the court and paid by the court can ever function in anything like that capacity for a defendant. And one thing that is perfectly clear from the opinion in Ake is that the court would pick the expert and it's one — the court will pick one expert and that's it. The defense has to live with it. And I just — if you could explain how that kind of an expert can ever function like an expert retained by the defense. Well, it's no different than a court-appointed lawyer. I mean — No, it is different from a lawyer, because a lawyer — you know, a lawyer doesn't have to believe in the client's innocence. A lawyer has a professional duty within the bounds of professional responsibility to do everything that can be done to advance the interests of the client. But an expert who's going to write a report and is going to testify, presumably if the person acts in good faith, is going to give an honest opinion. Yes. Am I wrong? Right. So what would you say to this court-appointed — you get one expert, it's appointed. What do you say to this expert? Now, I don't really want you to give your neutral opinion. I want to give you — I want you to give your most defense-friendly opinion on this. No, but I think what the court — the court could have gone further. But, Mr. Bright, why is that wrong? What? I'm sorry. Why is it wrong to ask an expert that's been provided to the defense to do that? Well, I think — To say, I have to defend this man. Give me my best argument. I think that's what lawyers do, and I think that — Not lawyers. Experts. Yeah, and experts. I think we ask the expert to look at whatever information the expert has gathered, look at the defendant, examine the defendant, all of those sorts of things. And, of course, you're looking for, hopefully, a favorable opinion. But that's not always going to be the case. Well, no, I understand. That really wasn't my question. Of course you could ask the expert, you know, give me the — give me whatever is most favorable. Give me advice that is most favorable to my client. But when it comes down to giving an opinion about whether the individual is sane or something that's relevant to mitigation, I don't see how you can ask the expert to do anything other than to give the expert's honest professional opinion. So it doesn't — it's doubt — I'm having difficulty seeing how an expert who is appointed by the court, you get one, could ever function that way. And I — I read the oral argument transcript in this case, and there are several places in the oral argument transcript where the court and the attorney for Ake equates an expert who is appointed by the court with a neutral expert. And that seems to be what that kind of an expert would be, a neutral expert, not an expert who is really part of the defense team. But the expert described in the Ake opinion, Justice Alito, is someone who is a part of the defense team. I mean, this question of partisan came up, of using the word partisan. Of course, parties, whether it be the prosecution, whether it be a wealthy criminal defendant, whether it be a wealthy civil litigant, are all going to hire partisan experts. They're going to hire the experts that they think will give them the opinion that will help their side of the case. Did the — did the defendant ask for an expert? On page 11 of their brief, they quote the Respondents, the Court of Appeals, which says there is no indication in the record that McWilliams could not have called Dr. Goff or the trial court indicated that it would have considered a motion to present an expert, but McWilliams, says the Respondent, chose not to follow one. And your brief on page 9 doesn't say he did ask for an expert. He wanted more time. He asked, he said, Judge, please appoint an expert. Did he? Two things, Justice Breyer. Did he or didn't he, yes or no? Well, what he did, and you can look at what John Bivens, one of the lawyers, said. Right towards the end, it's in the Joint Appendix, at about 207, where he made a long plea, you can almost see him on bended knee reading this, in which he said, we've received these records which show he's on psychotropic drugs, we received this report, we don't know what these terms mean or what it's about, we cannot determine for ourselves what we have here. And I point out, these lawyers were really sandbagged. And then he ends up by saying, that is why we renew the motion for a continuance. For an expert. Doesn't say that? Where does it say that? I just didn't see where he said it. Well, if you read all the way through, all the motions for a continuance, I mean, half the pages. Did he ask the judge to appoint an expert? He didn't come right out and say. The answer is no, then, is that right? Well, no, I don't think that's true.  an expert and I need a continuance. Where else does it become apparent that he wants the State to appoint an expert? Where? I just want to know where. Well, he says over and over, we can't do this without an expert. Maybe he already has some. Maybe he already has an expert. They did have someone advising them. Well, when the case goes up on appeal to the court of criminal appeals, both the State of Alabama and the defendant briefed on the merits of the AIC claim. The State argues he got everything he's entitled to under AIC, a neutral expert. He's not entitled to any more. The argument on behalf of Mr. McWilliams was that he was entitled to an independent expert. And the court of criminal appeals, when it decided the case, said all he was entitled to was the expert that he had, or no expert at all, but would have these State experts examine him. So that issue is crisply and clearly presented there. It's presented in the district court. It's presented in the court of appeals. And every court has looked at this on the question of whether he was entitled to an independent expert or not. May I point out on page 211A, Mr. Sobel does say, I told Your Honor that my looking at these records was not of any value to me, that I needed to have somebody look at these records who understood them, who could interpret them for me. Did I not tell Your Honor that? And shortly thereafter, he says, Your Honor gave me no time in which to do that. Your Honor told me to be here at 2 o'clock this afternoon. Would Your Honor have wanted me to file a motion for extraordinary expenses to get someone? The court, I want you to approach with your client and proceed to sentence him, correct? Sentence him to death, right then, without any further. And I'd point out this, as I was about to say a moment ago, all of this evidence came in in 48 hours, 48 hours before they get the first report from Dr. Goff, which is a neuropsychological examination, the day before they get records from the mental health hospital, from the Taylor Hardin Mental Health Hospital. And on the day of, he had been subpoenaing the records from the prison since August. And this is October 7th, he receives those records on the morning of the hearing itself, when he gets to court. And now he's got two huge piles of records from the hospital and from the prison. He's got a report using terminology that he doesn't understand, making findings that he doesn't understand. And he says, I need help. We can't possibly go forward in this case because we don't know what we have. We know we have something. Suppose the judge, the court appoints the head of the psychiatric department at a distinguished private university, one person. And he comes in, he tells the defense counsel, now, I'm going to explain to you what all these terms mean. There are lots of tests. I'll tell you about each of these tests. And I'm going to have the same meeting with the prosecution later on. You can ask me anything you want, and then I'm going to testify. I'm not sure what my opinion is yet, but I'll give my opinion. But here's the basis for my opinion, and I want you to ask any questions you want about what these tests mean. Is that sufficient? That's not sufficient because So you say there's always a conflict of interest unless the psychiatrist works for the defending, for the defense only. No, not necessarily a conflict of interest. But what AICS stands for is two things, really. The adversary system. The court talks about making it possible for the defendant to present his case within the adversary system. It's a minimal ability. He doesn't get a partisan expert. He doesn't get to choose the expert. But he gets a competent expert to give whatever advice that expert can give to him as he prepares his defense and as he prepares to deal with a prosecution case. Mr. Bright, can I ask you for your interpretation of the two paragraphs on page 85, which talk about Smith v. Baldy, which was a case where there was, in fact, a neutral expert. And the court talks about why it doesn't have to pay attention to Smith v. Baldy. I'm just curious as to what your interpretation of these paragraphs are, because well, I'll just leave it like that. Well, I think it was giving Baldy, Smith v. Baldy, a respectable burial is what it boils down to, because the court says we're in fundamental disagreement and points out that Baldy is a case that comes from 1953. At the time that case was decided, there wasn't even a right to counsel for defendants. So the court says this is of another time and other variables, and therefore, it's not to keep us from facing, taking on this issue. But counsel, just to follow up on that, doesn't it imply that a neutral expert would be permissible? No. I think it says that was the old days. Those were the horse-and-buggy days, or almost there, and this is today. And today, mental health is hotly contested. It takes experts on both sides, and for the defense to ---- Where is the stopping point, then, because the common law history, our tradition is that often courts could apply and appoint a neutral expert of its own choosing. If the defense now has a right to a particular kind of expert, partisan expert ---- It's not a partisan expert. I'm sorry. If I might just finish, then you can tell me where I've gone off the rails. Where is the stopping point? Is it just psychiatry? Would we also have to apply the same rule in other kinds of medicine, perhaps, forensic science? Where is the stopping point that you would advocate for the court? Well, I wouldn't advocate it because it's not before the court in this case. And what's before the court? But it would be something we'd have an implication we clearly have to consider. Well, but the thing that the court has to consider here is the unique nature of mental health and the fact that experts widely disagree on mental health. Experts widely disagree on everything. That's why you hire them. And that may mean that ---- And why they cost so very much. And many courts, state courts, other courts, have said, and of course under the Criminal Justice Act and the federal courts, that where there are other issues, there may be other experts. It's a due process question. That's my other question, is if due process requires a partisan expert, surely it would also require a partisan lawyer. In which case, what does the Sixth Amendment do? Does it guarantee the right of effective assistance of counsel? It's just superfluous? No, the Sixth Amendment guarantees a lawyer who will carry out their professional responsibilities in an ethical and legal way, as they should. And by the same token, an expert who's appointed would stay within, would act within the professional boundaries of the profession, of the mental health profession. I'd like to reserve the remainder of my time. Thank you, counsel. Mr. Brasher. Brasher, thank you, Mr. Chief Justice, and may it please the Court. AIG did not hold that a neutral expert fails to satisfy the due process clause. Let me talk about the psychiatric assistance that was provided in this case, because I think it's important to begin there. So before the trial of this case even started, the defendant made a motion for a full psychiatric evaluation specific to mitigating circumstances that he was then going to put at issue at the penalty phase of the case. And he was evaluated for over a month by three psychiatrists and a psychologist for that purpose, for developing mitigating circumstances. Sotomayor, I'm sorry. I thought that the three psychiatrists were part of the lunacy committee. That's correct, Your Honor. And I thought that the purpose of the lunacy committee was to see if he was mentally competent or not. That's incorrect, Your Honor. The first motion that was presented by the defendant expressly asked for an evaluation with respect to mitigating circumstances, and the lunacy commission report also addressed that issue of mitigating circumstances. But then after that report suggested further tests had to be taken with respect to that? No, Your Honor. That report suggested that there were no mitigating circumstances on the fact of the case. Then after the penalty phase, the defendant asked for more psychiatric assistance. They filed a motion for full neuropsychological evaluation, including a specific series of psychological tests. And that motion was also granted. That motion was granted on the same day it was filed, September 3, 1986, which is just a year or so after this Court had decided Aik. And then two experts did that. There was an expert. Sorry, General, but if we could just focus on – I think it would help to just sort of let's assume for the moment that this defendant did not get what he was asking for, which was a defense expert, and say whether Aik entitled him to such an expert. And I just want to sort of focus on the money sentence in Aik, you know, the we therefore hold sentence. And it says – here's what we hold. We hold that when the defendant makes this preliminary showing that mental health is going to be at issue, the state must assure the defendant access to a competent psychiatrist who will assist in evaluation, preparation, and presentation of the defense. So assist in evaluation, preparation, and presentation of the defense. And, you know, recognizing that we're all smart people and we can read any words, we can have an argument that any words mean anything we say, still, assist in evaluation, preparation, and presentation of the defense, doesn't that mean – like, you know, that's what you – that's the phrase you would use for a counsel, to assist in evaluation, preparation, and presentation of the defense. It means somebody on the defendant's side. Well, if I could answer that with two points, Your Honor. The first is that I think neutral experts are capable of assisting the defense in a way that an expert assists the defense. Well, they're capable in the sense that sometimes they might, but it's not what you would – this is – I guess I'm repeating myself, but this is the language that you use when you're talking about not somebody who sometimes might and is capable of, but who in fact will do so to the best of his ability, assist the defendant. And I think the way an expert assists the defendant is by translating medical diagnosis into language that lawyers can understand. The Court says in AIC that psychiatrists gather facts and offer opinions. And we would submit that a psychiatrist who does what you ask them to do, who does the evaluations that you ask them to do, prepares the reports that you ask them to prepare, they're assisting your defense just like they did in this case. The word assistance, you know, we usually use it most often is the defendant is entitled to the assistance of counsel. Assistance of counsel doesn't mean neutral. And this – the one thing that stands out in this case is the word assist the defense, assisting, adversarial. Those at least are accused that what the decision writer had in mind was assisting the defense, just as a lawyer assists the defense. Well, if I could just respond to that, Justice Ginsburg. I think the Court has to evaluate the holding of AIC in light of the facts and the question presented in AIC, right? This isn't a statute that we're interpreting. It's a judicial decision. And the problem in AIC was not that there was a neutral expert that had assisted the defendant. The problem in AIC was that there was no expert that had assisted the defendant at all. But sometimes the Court goes beyond what the facts are. And sometimes, you know, sometimes it issues a holding that's just precisely calibrated to the facts and sometimes broader. And it seems that what we do is we look at the language. We look at what the Court said and said, given what the Court said, is this right clearly established? And I guess, again, just to repeat what Justice Ginsburg said, I started counting up the word assist in this opinion. And frankly, I lost track. But every time this opinion talks about this, it talks about assisting the defense and assisting the defendant, including to cross-examine the prosecution. It just seems that the premise of the entire opinion is you're on the defense team. Well, there are parts of the opinion that we would suggest that also cut in our favor. So, for example, the Court's discussion of Baldy, I think, cuts in our favor because the Court does distinguish Baldy on the grounds that neutral experts testified in that case. Baldy was a case where this Court affirmed it. Well, at first it does. You're exactly right. And this is why I asked about Baldy. I find those two paragraphs incredibly confusing, because the first paragraph says we're distinguishing it because there it was a neutral expert. And then the second paragraph says, anyhow, Baldy, I mean, it does – it doesn't use the term overrule, but a lower court would be crazed if it relied on Baldy after that opinion. Well, I'll count incredibly confusing as a plus for me in a Federal habeas case where the law has to be crazed. No, no, no. Two paragraphs might be confusing, but the question is, what does the opinion say, and particularly, what does the holding say? Right. And the other part of the opinion that we think counts in our favor is the part where the Court says, in the paragraph that has this holding in it, that we're going to leave it to the States to decide how to implement this right. But what about the point that Justice Kagan raised? She was quoting from the opinion. Why do we have to get into an argument about whether they can be independent or partisan? An expert should not be – he should give his honest opinion. That's what they're supposed to do. Why is that the right characterization? Why not just quote from the opinion? The defense has to have somebody who will conduct an appropriate examination, assist in evaluation, preparation, and presentation of the defense. And in case we're unclear what that means, the Court previously said that that person, the object is, is the insanity defense viable, present testimony to that effect, assist in preparing the cross-examination of a State psychiatric witness. So why do we have to say more than, that's the question, and here it seems to me that this defendant certainly did not get that help. They came in, they presented a report, I've read pages from the report, and that report was apparently controversial. And did the defendant have someone to do cross-examination, help him with that, help him understand the report, et cetera? And that's the end of the case. Right. So if I could just address that, Justice Breyer. So just with respect to the timing, the defendant asked for this report, asked for a full neuropsychological evaluation, and the Court granted the motion. And the defendant asked for that report to be provided to the report, to the Court before the judicial sentencing, and that's when the report was provided. So what? I'm sorry, I'm not being facetious. I mean, literally, I don't know the answer to that, so what? Did he have a person who could look at the report, help him cross-examine, help him understand? Now, who was that person? I didn't see one here. My point, Your Honor, is that that person who prepared the report was his expert. It was exactly what he Mr. Goff, exactly. He didn't seem to be his expert. He seemed to be a member of the State Lunacy Commission. I don't think he consulted. Did he consult with a defense attorney before? Did he explain to the defense attorney, et cetera, et cetera? Just to be clear, he was not a member of the Lunacy Commission. He was a he was the head of psychology at a mental hospital. And Dr. Goff also routinely testifies for criminal condescension cases. I'm certain he was a fine doctor. My question is, did he assist the defense in the cross-examination? Did he assist, of himself, I doubt it, did he assist in the preparation, the, you know, these, those four things that were listed? Did he or did he not? There was no cross-examination. He was the defense expert. And why was there no cross-examination? Because he was the defense expert. I mean, this. Because he was the defense expert. Right. Well, you usually meet with your expert and go over the testimony with care. Did that happen here or could that happen here? And if he had met with the prosecution, would that have been a violation of his ethical obligations? Dr. Goff comes into the case because the defendant files a motion for full neuropsychological testing after the penalty phase of trial. He wants to get those results to provide to the court. I mean, we submit that in Ake this Court said that the defendant has the right to get a psychiatrist to assist him, to put his mental health at issue, and here the defendant wanted to put his mental health at issue for mitigating surgery. Could he be consulted by either or both sides privately to prepare the examination? I don't think that there was anything prohibiting the prosecution from talking to Dr. Goff. Would you object to the following disposition of the case? That we say the issue is not partisan versus independent. The issue is whether the defense had assistance from a psychiatrist in the evaluation, preparation, and presentation of the defense, including cross-examination of hostile or State psychiatric witnesses. That's what Ake provides. That's clear. And what we want you to do, court of appeals, is decide whether that was so. I think that we – I would suggest that the right way to look at that issue is to decide whether the State courts unreasonably applied the holding for Ake. Breyer, if they did not, if they did not give the – if they did not give him psychiatric assistance and pay for it, a psychiatrist who would have done those four things that I just mentioned, then they did violate clearly established law. Because that's what Ake says. My point, though, Your Honor, is that the question under Federal habeas law is whether the State court unreasonably applied the law. That was the second question presented in the cert petition from Mr. Bridenstine. Mr. Brasher, I thought the question on which we granted cert was whether somebody with the status of Dr. Goff sat at – whether it was clearly established that somebody with the status of Dr. Goff did not. Yes, of course. Satisfy Ake, not whether Dr. Goff, given his status, did the things that he was supposed to do under Ake. That's exactly right, Justice Alito. And my point was that that was the second question presented in the cert petition. Justice Breyer's question was the second question that the Court didn't grant cert on. To talk about the question that the Court did grant cert on, I do think it's important that this issue wasn't presented in Ake, because this is a Federal habeas case and this is the first time that anyone representing a State or the Federal government has been able to stand here and argue that a neutral expert actually does satisfy the due process clause. And we would submit that the way Federal habeas is supposed to work in this area is that the States sort of get a first shot at the Supreme Court to argue our position. Ginsburg, is there any jurisdiction that holds that today, that all that Ake requires is a neutral expert? I thought by now every jurisdiction recognizes that Ake requires an expert who will be essentially part of the defense team. Well, this issue really has been mooted over the last 30-some-odd years because of statutory changes. So there are – there are jurisdictions that have reversed their previous cases, but there are not. Including – including Alabama. Am I right that in 2005 the Alabama Court of Criminal Appeals said Ake made it clear that an independent is entitled to an independent expert devoted to assisting his defense, not one providing the same information or advice to the court in prosecution? That's correct. But what we would submit is what these lower courts are doing is they're extending this Court's precedent to address this question. And we don't have to really address this here because this is not a direct appeal case. The question in this case is not whether Ake should be extended to say that a neutral expert doesn't satisfy the due process clause. The question in this case is whether Ake held that. And we would submit that Ake says nothing about independent. Kennedy, if Ake says that you have a right to meaningful assistance from a psychiatrist, you the defense, and then over time it becomes clear to us that that psychiatrist must be in – must be retained for the benefit of the defense only, is that a new, clearly established holding, or is it simply a refinement of a clearly established right that was set forth in Ake? The Petitioner's counsel didn't seem to want to embrace that. It gave us the impression that if it's ambiguous, he loses. But I'm not sure that's the case. Well, I think the reason my friend didn't want to embrace that is because when you use the word refinement, I think what you're suggesting, Justice Kennedy, is extension. And this Court has said that you can't extend a precedent in the context of Federal habeas. And that really is what my friend is suggesting, is that this Court should extend the actual holding of Ake to embrace this new right that says that a neutral expert is insufficient. What was the case where we said that? I think you're right. The court said that in White v. Woodall. The court said that. I should also point out that there's that the actual holding of Ake calls for assistance and evaluation, preparation and presentation of the defense. And the theme of Ake, if you will, is all about how we used to think that psychiatric opinions were just like one thing, but now we know better. We know that different psychiatrists have different opinions. And it's really important to arm even an indigent defendant with the tools that he needs to establish what he wants to establish about his mental health. I mean, that's really the theme of the opinion, that you have to give the indigent defendants, just as you give the wealthier defendant, the tools that they need to establish what they want to establish about mental health. And then that's consistent with the – with these words that are repeated in the holding and elsewhere. Well, to go to the issue of wealthy and indigents, this court did say in a footnote that it was reserving that question. It was not talking about the Equal Protection Clause. No, no, no. And it's not talking about parity. All it's saying is that we recognize that the state is going to have experts. We recognize that if you had money, you would have experts. We recognize that mental health is one of those things that people can have different opinions about and that people would really like to have experts. And we're going to give this indigent person a single one who will be able to assist him in these ways, in evaluating, preparing, and presenting the defense. And our point, Justice Kagan, is just that this question presented in this case, which is about whether a neutral expert can satisfy that, was not at issue in Aiken. It wasn't resolved in Aiken. It seemed in the defense – well, here, what about this? Are you saying this? The defendant should be entitled to one competent opinion from a psychiatrist who acts independently of the prosecutor's office. That's, I think, what you're arguing. I mean, this is a trick question. Because, of course, I'm quoting from the dissent. And what the dissent says is that is precisely what the Court doesn't hold. And I wish they would. I've written dissents like that, too. We all have. But if it's a dissent and you say that isn't what the Court holds, that's at least some evidence that that wasn't what the Court held. Well, Justice Rehnquist, former Justice Rehnquist in that case, dissented for three reasons, really, on this issue. The facts was most of his dissent. He said that this is a situation where no expert assistance was required at all. He also said that this entire discussion was dicta. And then, of course, he does have this phrase where he says that you shouldn't be entitled to a defense consultant or an opposing view. But we would suggest that his dissent is no more dispositive than the Chief Justice's concurrence in that case, which took a very limited view of Aik. I mean, ultimately, the way you interpret what is clearly established under one of this Court's holdings is you look at the facts of the case and you look at the question presented, and there's just no dispute that on the facts of Aik, the problem was that he did not get any expert assistance at all.          Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. We look at the holding. This is what the holding says. You're entitled to somebody who will assist you in evaluating, preparing, and presenting your defense. Well, with respect, Justice Kagan, this is what the Court said in Lopez about how you evaluate this issue. The Court said, quote – I'm sorry. The Court said you look at, quote, the specific question presented, end quote, in the case, and you see whether it's come up again. And so the specific question presented here is about whether a neutral expert can satisfy the due process clause. That wasn't presented in Aik. Mr. Basher, one piece of evidence about what a holding means is what the parties ask for in an adversarial system where parties generally control the outcome of cases in terms of the issues presented. And in Aik, as I understand it, defense counsel asks for the full psychological That's exactly right. And the fact that that motion was denied led this Court, in italics, in the opinion, to say, quote, there was no expert testimony for either side on Aik's sanity at the time of the offense, end quote. That would be quite something, I have to say, General. If we say, listen, when you read our opinions and when you try to figure out what we're saying, what you have to do is go back to the QP and just narrow it down to exactly what the QP said. I think that that would be a shocking way to interpret this Court's opinions. Well, just to be clear, Justice Kagan, I'm not saying you look at the cert petition itself. I'm saying you look at the question presented on the facts of the case. Because, once again, we're not doing statutory interpretation. The effort here is not to determine the intent of the author of Aik. The question here is to determine what Aik clearly established. And just the way you interpret judicial opinions has to be in light of the facts of the case and the question that's actually presented in the case. Because this is the first time that someone from the State has been able to make this argument to you, because it was not presented in Aik at all. The State of Oklahoma could argue that. Kennedy, maybe what the parties actually argued, too, right? Justice Ginsburg. Ginsburg, one facet of this case, you presented as the defense is asking for a defense-oriented expert, and you said that there was no such expert for the State. But I think the opinion itself says that before the sentencing judge, the prosecutor relied on the testimony of State psychiatrists who had testified at the guilt phase that he was dangerous to society. So the judge, before the judge imposes sentence, is looking back to the guilt phase where there were experts for the State, not independent whatever, they were called by the prosecutor to testify to future dangerousness. Just to be clear, Justice Ginsburg, are you talking about the facts of Aik or the facts of this case? I'm talking about the facts of Aik. Yes, Justice Ginsburg. So in that case, one of the issues at capital sentencing was that the State actually put the defendant's mental health at issue as an aggravating circumstance. So this Court knows that the way capital punishment works is it's the State's burden to prove an aggravating circumstance, and if the State doesn't meet that burden, then a defendant isn't eligible for the death penalty. And in Aik, the problem was that the State used psychiatric testimony to meet its burden, to make the defendant eligible for the death penalty, and the defendant didn't have any way to rebut that because the defendant's motion had been denied. Here, once again, the defendant was trying to put his mental health at issue. He was trying to raise it as a mitigating circumstance. There is no issue of future dangerousness in this case because the aggravating circumstances that made Mr. McWilliams eligible for the death penalty. I'm not asking about that particular issue, but I thought that the sentencing judge now, after the guilt phase, is looking to the testimony that was given at the time of the offense, not neutral experts. And I'm sorry, is that in Aik? Is it your question about Aik's? Yes, it is all in Aik. Yes. So there were not prosecution experts. They were experts that were that had evaluated the defendant for competency to stand trial. There was no evaluation ever done for the defendant's sanity at the time of the  offense, and because his motion was denied, although Mr. McWilliams' motion was granted, in Aik, his motion was denied and he couldn't put that issue in front of the court. Here, the motion was granted, so he was allowed to put that issue in front of the court. He had a full neuropsychological evaluation, and the judge at sentencing looked at that report as part of his evaluation. I just want to do mention one thing that goes back to the timing issue, which is this case, my friend, that there was some kind of sandbagging with respect to these records from the Department of Health. The only thing that he's ever suggested was relevant in those records was the specific prescriptions that the Mr. McWilliams was getting at the Department of Corrections. But the lawyer for Mr. McWilliams knew about those drugs well in advance of this hearing. If you look at page 269 of the trial transcript, well in advance of trial, counsel for Mr. McWilliams talks about the drugs that his client is getting. Actually, if you look at the joint appendix on page 191A, you'll see that the lawyer for Mr. McWilliams actually shows up to the judicial sentencing with articles about the specific drugs that his lawyer's or that his client is being prescribed. So he knew about this well in advance of the hearing. And another way to evaluate this issue is that on postconviction review, you know, 20-some-odd years after this conviction was done, Mr. McWilliams got to hire a partisan expert, he got to search the country for the best partisan expert, and he hired Dr. Woods, an expert from California. And his analysis of this was just that Mr. McWilliams was bipolar. He didn't draw anything significant out of those records that would lead to a change in the ultimate outcome here. I mean, ultimately, this case has been pending for over 30 years. And part of the reason why Congress said that under Federal habeas we're going to require clearly established law at the time of the State court's decision is because we're supposed to look at this not, you know, through 2017 eyes. We're supposed to look at this through the eyes of the State court that had to evaluate this issue in 1991. And that, we submit, is why the fact that all these lower courts were saying that neutral experts could satisfy the due process clause is important, because it's true that there have been a lot of lower courts, a lot of smart judges have read AIC and they found it ambiguous. And I wonder if this may have been what went on in their minds. We know what was going on in AIC because we have written opinions like that and we have joined opinions like that. This is an opinion that is deliberately ambiguous because there was probably disagreement among the members of the majority about how far they wanted to go. Do you think that's a reasonable hypothesis? I think that's a very reasonable hypothesis. And I think one way, one way that that hypothesis has some merit is that when this precise issue about neutral expert versus partisan experts came back up to this Court in Granville where it was directly presented, this Court didn't grant cert and instead Justice Marshall was writing a dissent from the denial of cert. I see that my light is on. Unless the Court has any further questions, I'll just wrap up and say that this case has been going on for over 30 years. This Federal habeas case has actually been pending for over about 14 years now and we would respectfully request that the Court affirm the court of appeals. Thank you. Thank you, counsel. Three minutes, Mr. Bright. Thank you very much, Mr. Chief Justice. I think with regard to this question about extension, I think what really has happened here is refinement, that AIC was decided 1985, it's 30 years ago, there's been some refinement, and everybody today, this is just not a controversial issue. Because, and I think because of AIC, you now have, as the amicus brief for the public defender showed, almost in every State that either that's done in-house in a public defender office so you don't even go before a judge and ask for an expert. You just go and get it from your boss and there's a budget and a public defender budget for it. There are other places they've done it other ways, but that most people, including, as Justice Ginsburg pointed out, the State of Alabama courts have come around to the view, and in Morris v. State, the Alabama court said it is clear that this must be an expert independent of the prosecution. DeFries' case, DeFries v. State, the Texas Court of Criminal Appeals, regardless of what Granville held, said this can't be right, what Granville held, this, in order for this to work in the adversary system. And I think that's what we come back to at the end on this case, is the proper working of the adversary system. And this certainly doesn't put the defense in an equal position with the prosecutor, not by a long shot. But it at least gives the defense a shot. It at least gives them one competent mental health expert that they can talk to, understand what the issues are, present them as best they can. And one of the things it said is that that expert may very well testify for the defense. So we're talking about everything from gathering information, to organizing it, to preparing or deciding on the defense to be used in the case, to coaching the, or advising the lawyer about cross-examination, to actually testifying. And this is like with Strickland v. Washington. And the statement that was made there, and this Court in two cases, in Wiggins v. Smith and Williams v. Taylor, looked at the rule, that is, that there had to be an investigation that was clearly established in Strickland, and then applied it to the lack of investigation, different kind of investigations for different things, in Smith and in Williams v. Taylor. Ginsburg. If you prevail, it would be a new sentencing hearing, right? Yes. Because guilt is over. Yes, that's true. Otherwise, if there are no questions, I'd ask the Court to reverse. Thank you. Thank you, counsel. Case is submitted.